

**FILED**

DEC - 6 2007

CLERK'S, BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

U.S. BANKRUPTCY COURT
**ENTERED**

DEC 10 2007

Jon D. Ceretto, Clerk of Court
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

#### RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>EUGENE H. PERRINE, JR.,<br><br>          Debtor.<br><br>STEVEN M. SPEIER, Chapter 7 Trustee of the Estate of Eugene H. Perrine, Jr.,<br><br>          Plaintiff,<br><br>v.<br><br>EUGENE H. PERRINE, JR.,<br><br>          Defendant. | Case No. RS 05-13979 PC<br><br>Adversary No. RS 05-01473 PC<br><br>Chapter 7<br><br><br><br>Date   November 26, 2007<br>Time:  9:00 a.m.<br>Place:  U.S. Bankruptcy Court<br>         Courtroom # 303<br>         3420 Twelfth Street<br>         Riverside, CA |

### MEMORANDUM DECISION

Plaintiff, Steven M. Speier, Chapter 7 Trustee ("Speier") objects to the granting of a discharge to the Defendant, Eugene H. Perrine, Jr. ("Perrine") pursuant to 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5). The court conducted a trial in this adversary proceeding on November 26, 2007, at which time Kathleen M. Goldberg appeared for Speier and Kenneth J. Catanzarite appeared for Perrine. The court, having considered the pleadings, joint pretrial order, the evidence, and arguments of the parties, makes the following findings of fact and conclusions of law[1] pursuant to Fed. R. Civ. P. 52, as incorporated into Fed. R. Bankr. P. 7052.

---

[1] These findings of fact and conclusions of law incorporate the Findings of Fact and Conclusions of Law on Plaintiff's Motion for Partial Summary Judgment Regarding the First and Third Causes of Action or, In the Alternative, For Summary Adjudication of Claims, Issues and Defenses Against Defendant, Eugene H. Perrine, Jr. entered on September 17, 2007. To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent that any conclusion of law is construed to be a finding of fact, it is hereby

# I. STATEMENT OF FACTS

**A.    The Debtor.**

Perrine was born on March 3, 1945.  He is 62 years of age, and a high school graduate with some college education.  Perrine testified at his deposition that he has "done everything." He has worked for the telephone company, post office, and as a geologist and a machinist.  He attended a police academy and worked for 1 year as a police officer with the city of Arcadia, California.  He started working as an electrician in the 1970s, operating his own business for much of that time.  Perrine's electrical business, Perrine Electric Company, Inc. ("Perrine Electric") had gross revenues of over $2 million in 1 year.  At one time, Perrine managed upwards of 20 employees of the corporation.

Perrine has been married twice.  His current spouse is Vicki L. Perrine, whose maiden name was Vicki L. Meyers.  Perrine and Vicki L. Meyers were married in September 2002. Prior to her divorce from her first husband, Vicki L. Perrine's name was Vicki L. Martinez. Perrine testified that Vicki L. Perrine stopped using the name Vicki L. Martinez when the two were married in September 2002, at which time she started using her maiden name Vicki L. Meyers.  However, the name Vicki L. Perrine appears on their marriage license.  The name Vicki L. Perrine also appears on a number of documents executed within 1 year after their marriage and used by Perrine either to transfer a significant portion of his sole and separate property to his new spouse or to encumber such property with unrecorded liens in favor of his new spouse.

**B.    The Perrine Trust.**

Prior to August 8, 2003, Perrine owned as his separate property a 30.32 acre tract of land located in Klamath Falls, Oregon ("Oregon Property").  On August 8, 2003, Perrine transferred the Oregon Property to the Eugene H. Perrine and Vicki L Perrine Family Trust dated August 8, 2003 ("Perrine Trust") by Trust Transfer Grant Deed recorded on August 22, 2003, at Volume

---

adopted as such.

-2-

1   M03, Page 61460, Real Property Records, Klamath County, Oregon.

2          On August 8, 2003, Perrine owned as his sole and separate property the real property and

3   improvements located at 285 W. Skyline Drive, La Habra Heights, California ("La Habra

4   Property"). On August 8, 2003, Perrine signed and delivered a promissory note to his wife,

5   Vicki L. Perrine, in the original principal sum of $143,500 ("Promissory Note # 1"). Perrine also

6   executed a Short Form Deed of Trust and Assignment of Rents ostensibly to secure payment of

7   Promissory Note # 1, but the deed of trust was never recorded because Perrine and his wife

8   "wanted to leave open the option of refinancing the La Habra Property and believed that a lien

9   would prevent [them] from doing it."

10         On August 8, 2003, Perrine also signed and delivered to Vicki L. Perrine a further

11  promissory note in the original principal sum of $150,000 ("Promissory Note # 2"). Perrine also

12  executed a Short Form Deed of Trust and Assignment of Rents ostensibly to secure payment of

13  Promissory Note # 2, but the deed of trust was never recorded again because Perrine and his wife

14  "wanted to leave open the option of refinancing the La Habra Property." Perrine testified that

15  the promissory notes totaling $293,500 were executed for the purpose of documenting loans or

16  cash advances previously made from Vicki L. Perrine's separate funds and used for company

17  loans and company expenses as well as for improvements to the La Habra Property.[2] Perrine

18  then transferred his 100% interest in the La Habra Property to the Perrine Trust by Trust Transfer

19  Grant Deed recorded in the Los Angeles County Recorders Office on September 26, 2003.

20         The Perrine Trust is an _intervivos_ revocable trust. Perrine is the trustor, co-trustee and

21  beneficiary of the Perrine Trust. The assets of the Perrine Trust ostensibly included at its

22  inception the following marital property:

23  _____

24  [2] According to Perrine's Exhibits G & H, Note # 1 represented reimbursement for improvements
    to the La Habra Property paid for by Vicki L. Perrine between March 8, 2000 and April 9, 2004.

25  Note # 2 represented reimbursement to Vicki L. Perrine primarily for 32 checks written between
    January 8, 2002 and August 8, 2003, to Blue Cross, Eugene Perrine, Perrine Electric, Chase, and

26  Lopez Insurance totaling $111,314.50, plus "separate property" work performed by Vicki L.
    Perrine which Perrine valued at $30,000, for a total of $141,314.50.

27

- 3 -

Community Property: "All items of tangible personal property, including, but not limited to, furniture and furnishings, silverware, clothing, books, collections of tangible personal property, and other tangible personal property usually kept at the Trustor's residence."[3]

Perrine's Separate Property: (a) La Habra Property; (b) Oregon Property; (c) 50 shares of stock in Perrine Electric, and (d) a pension at Schwab & Company, Inc.[4]

The assets of the Perrine Trust also included Promissory Note #1 and Promissory Note #2 (collectively, the "Notes"). Section 1.02 of the Perrine Trust states, in pertinent part:

"All property now or hereafter conveyed or transferred to the [Trust] . . . shall remain, respectively, community property, quasi-community property, or the separate property of the Trustor transferring such property to the Trustee."

**C.    The AAA Litigation.**

Perrine is the president of Perrine Electric. In 2003, Perrine Electric's principal supplier was AAA Electrical Supply, Inc. ("AAA"). Perrine Electric was delinquent in the payment of its account to AAA, and Perrine had personally guaranteed payment of the account. On December 5, 2003, the balance due on Perrine Electric's account with AAA was $71,167.05 and AAA had consulted an attorney to collect the debt from Perrine Electric and Perrine.

Al Alverez ("Alverez"), AAA's president, testified that on or about December 5, 2003, Perrine agreed to sign a promissory note for the balance due on the account secured by a deed of trust on the La Habra Property. Perrine admits meeting with Alverez on or about December 5, 2003, to discuss payment of the delinquent account, but denies an agreement to reduce the AAA debt to a note secured by a deed of trust on the La Habra Property or that he reneged on such an agreement. Alverez testified that, when the deal fell through and it was clear that the parties could not settle, counsel for AAA sent notice to Perrine Electric and Perrine in March 2004 that, unless payment was made in full, a lawsuit would be filed against them to collect the outstanding debt.

In March 2004, the Perrine Trust sold the La Habra Property for approximately $875,000,

---

[3] The Eugene H. Perrine Jr. and Vicki L. Perrine Family Trust Declaration of Trust, Schedule A.

[4] The Eugene H. Perrine Jr. and Vicki L. Perrine Family Trust Declaration of Trust, Schedule B.

-4-

1 | generating nearly $450,000 in net proceeds.  At the time of the sale of the La Habra Property,

2 | Vicki L. Perrine was in the process of purchasing the real property and improvements at 4025

3 | Prairie Dunes Drive, Corona, California, 92883 ("Corona Property").  Perrine and Vicki L.

4 | Perrine, as Co-trustees of the Perrine Trust transferred at least $293,500 directly from the escrow

5 | of the sale of the La Habra Property into Vicki L. Perrine's pending escrow for the purchase of

6 | the Corona Property ostensibly in payment of the Notes.  Perrine testified that they used the

7 | remaining $153,294.94 in net sale proceeds to pay personal expenses, including $37,656 for

8 | installation of a pool, patio and other improvements on the Corona Property.

9 | Perrine testified that the entire net proceeds of $153,294.94 was spent in 7 months.  None

10 | of the funds was used to pay any portion of the debt due AAA for which Perrine was personally

11 | liable under his guaranty.  Perrine testified that he did not understand or remember that he had

12 | signed a personal guaranty of the debt to AAA at the time of the sale of the La Habra Property,

13 | and further, that he did not finally remember or understand that he had, in fact, personally

14 | guaranteed AAA's debt until about 6 or 7 months later when the funds were gone.

15 | By Grant Deed recorded on March 26, 2004, the Corona Property was purchased only in

16 | the name of Vicki L. Meyers, a married woman as her sole and separate property.  Perrine

17 | resided in the Corona Property with his wife, Vicki L. Perrine, aka Vicki L. Meyers, from March

18 | 2004 through the date of bankruptcy.  On March 26, 2004, an Interspousal Deed was recorded in

19 | which Perrine transferred his interest in the Corona Property to his wife, Vicki L. Perrine a/k/a

20 | Vicki L. Meyers.

21 | On April 29, 2004, AAA sued Perrine in Case No. BC 324665, styled <u>AAA Electrical</u>

22 | <u>Supply, Inc. v. Perrine Electric Company, Inc. and Eugene H. Perrine, Jr.</u>, in the Superior Court

23 | of Los Angeles County, for the sum of $71,167.05, plus attorneys fees and costs, based upon his

24 | personal guaranty of the debt of Perrine Electric.  Perrine denies knowing that he was sued

25 | individually when he received the complaint.  Perrine testified that he thought only the

26 | corporation was being sued, but admitted that he did not know if he even read the complaint

27 |

-5-

1  when he was served.  Perrine testified that he did not remember what he did with the complaint

2  when he was served, but at some point he gave it to his attorney, Kenneth J. Catanzarite.

3      Catanzarite Law Corporation ("Catanzarite") represented Perrine and Perrine Electric in

4  the state court action.  Perrine testified that he did not recall whether he met with Ken

5  Catanzarite regarding the AAA litigation prior to settlement of the litigation.  He testified that he

6  had no personal knowledge of any settlement negotiations, and that he had delegated all

7  settlement negotiations to Ken Catanzarite with an instruction to settle the case.

8  **D.    The Oregon Property Transfer.**

9      On January 10, 2005, Perrine, individually and on behalf of Perrine Electric, signed a

10  Stipulation for Entry of Judgment, agreeing to a judgment in favor of AAA and against Perrine

11  and Perrine Electric, jointly and severally, for the sum of $75,000.[5]  The following day, Perrine

12  and Vicki L. Perrine, Individually and as trustee, executed a document entitled "Retainer

13  Agreement and Application of In Kind Payment" dated January 11, 2005, agreeing to transfer

14  the Oregon Property to Catanzarite at a stipulated value of $30,000 for payment of accrued

15  attorneys fees and costs and as a credit for future attorneys fees and costs to be incurred by

16  Perrine and Vicki L. Perrine.  Perrine and Vicki L. Perrine each testified that they signed the

17  document in Ken Catanzarite's office and that they were given an opportunity to read the

18  document before they signed it.  However, Perrine admitted that he did not read it before he

19  signed it stating "I just sign things when I'm in attorneys' offices."

20      The Retainer Agreement states specifically that the payment is "for the purpose of

21  securing the continued representation of the Trust and the individuals in future litigation

22  including without limitation, with creditors and to protect the home equity of Vicki and the

23  pension of Eugene."  Both Perrine and Vicki L. Perrine testified that they knew at the time they

24

25  _____

   [5] By this time, Perrine Electric had all but lost its contractor's license.  Perrine Electric's
26  contractor's license was suspended by the State of California in the first quarter of 2005 after
   AAA made a claim on its bond.
27

1  signed the agreement that AAA could collect its judgment against the Oregon Property. Vicki L.

2  Perrine further testified that she wanted to protect the equity in the Corona Property from attack.

3        On January 13, 2005, Perrine and Vicki L. Perrine, as Co-Trustees of the Trust, executed

4  a Statutory Bargain and Sale Deed conveying the Oregon Property to Kenneth J. Catanzarite for

5  $30,000. Perrine testified that the $30,000 valuation for the Oregon Property was based on a

6  value given to him by a real estate agent in Oregon. According to his deposition, however, the

7  real estate agent suggested that the Oregon Property be listed at $50,000. Perrine thereafter

8  arrived at the $30,000 valuation. The deed of the Oregon Property to Catanzarite was recorded

9  on January 14, 2005, at Volume M05, Page 03482, Real Property Records, Klamath County,

10  Oregon. Ten days later, the Stipulation for Entry of Judgment was entered in the state court

11  action in favor of AAA in the amount of $75,000.

12  **E.    Perrine's Chapter 7 Bankruptcy.**

13        On April 21, 2005, Perrine filed his voluntary chapter 7 petition in this case. Speier was

14  appointed as trustee upon the filing of the petition. On May 6, 2005, Perrine signed and filed his

15  schedules and statement of financial affairs. Perrine signed a Declaration Concerning Debtor's

16  Schedules in which he stated:

17      "I declare under penalty of perjury that I have read the foregoing summary and schedules,
consisting of 14 sheets, and that they are true and correct to the best of my knowledge,

18  information, and belief."

19  In Schedule A, Perrine disclosed that he did not own an interest in any real property. In

20  Schedule B, Perrine disclosed assets valued at $415,740 consisting of cash, clothing, two

21  vehicles, and his interest in a profit-sharing plan valued at $400,000. In Schedule F, Perrine

22  disclosed 9 creditors holding unsecured non-priority claims in excess of $174,073.[6] In Schedule

23  B #12, Perrine declared under penalty of perjury that he did not own stock or an interest in a

24

25  [6] AAA was listed in Schedule F as the holder of the largest unsecured non-priority claim against

26  the estate. On November 29, 2005, AAA filed a proof of claim asserting an unsecured non-
priority claim in the amount of $76,767.12.

27

1    business on the petition date.  In Schedule B # 19, Perrine declared under penalty of perjury that

2    he did not own an interest in a trust on the petition date.

3         On May 6, 2005, Perrine also signed a declaration at the end of his statement of financial

4    affairs which states:

5         "I declare under penalty of perjury that I have read the answers contained in the
          foregoing statement of financial affairs and any attachments thereto and that they are all
6         true and correct."

7    In response to Question # 3, Perrine declared under penalty of perjury that he had not made any

8    payments to or for the benefit of creditors within 90 days preceding the commencement of the

9    case or payments to or for the benefit of creditors who were insiders within 1 year preceding the

10   commencement of the case.  In response to Question #10, Perrine declared under penalty of

11   perjury that he had not transferred any property (other than in the ordinary course of business or

12   financial affairs of the debtor) within 1 year preceding the date of bankruptcy.  In response to

13   Question # 9, Perrine declared under penalty of perjury that he had paid the sum of $3,000 to

14   Catanzarite on January 14, 2005, for debt counseling or bankruptcy.  Perrine did not disclose any

15   facts concerning the Corona Property in either his schedules or statement of financial affairs.

16        On May 6, 2005, Catanzarite filed a document entitled "Disclosure of Compensation of

17   Attorney for Debtor" in which Catanzarite disclosed pursuant to § 329(a) and Fed. R. Bankr. P.

18   2016(b) that it had received the sum of $3,000 from the Perrine as compensation for legal

19   services rendered or to be rendered in contemplation of or in connection with the case.

20        On May 23, 2005, Perrine attended a meeting of creditors at which he was examined by

21   Speier under oath concerning the accuracy of the information disclosed in his petition, schedules,

22   statement of financial affairs, and other documents.  Speier questioned Perrine concerning the

23   apparent inconsistency between Schedule B which indicated that Perrine had $400,000 in an

24   exempt pension account and Schedule I which stated that Perrine was self-employed and had no

25   source of income.

26        At the first meeting of creditors on May 23, 2005, Perrine testified under oath that he and

27

-8-

1   Vicki L. Perrine were married in September of 2004.  Perrine further testified under oath that

2   Vicki L. Perrine was actually on title to the La Habra Property, and that when Perrine and Vicki

3   L. Perrine jointly sold the La Habra Property, the proceeds of the sale were used to purchase the

4   Corona Property in Vicki's name alone.  In response to Speier's request for documents at the

5   first meeting of creditors, Perrine's counsel sent a letter to Speier dated June 13, 2005,

6   explaining the disposition of the proceeds from the sale of the La Habra Property.  However, the

7   letter did not disclose that $153,294.94 of the sale proceeds from the La Habra Property were

8   transferred and deposited into a bank account held solely in the name of Vicki L. Perrine.

9        At a continued meeting of creditors on June 20, 2005, Perrine testified under oath that he

10   and Vicki L. Perrine established the Perrine Trust shortly after they were married and that the

11   only asset in the Perrine Trust had been the La Habra Property.  Speier requested that Perrine

12   produce a copy of the Perrine Trust agreement, a list of the assets in the Perrine Trust, and

13   cancelled checks, invoices, bank statements, and information regarding both the improvements

14   to the La Habra Property and the use of the $153,294.94 in cash received from the sale of the La

15   Habra Property.

16        On June 15, 2005, Plaintiff filed a complaint in Adversary No. RS 05-01243 PC, styled

17   Steven M. Speier, Chapter 7 Trustee v. Vicki L. Perrine, et. al., seeking, in part, to recover as a

18   fraudulent conveyance funds received by Perrine from the sale of the La Habra Property prior to

19   bankruptcy, which were then transferred to Vicki L. Perrine and used to purchase, as her separate

20   property, the Corona Property.  Perrine admits that the Notes were not produced to Speier until

21   October 13, 2005, in response to Speier's request for the production of documents in Adversary

22   No. RS 05-01243 PC.

23        After discovering the Oregon Property transfer, Speier filed a motion seeking to compel

24   Catanzarite to amend its Rule 2016(b) statement to disclose the transfer and to review the

25   compensation received by Catanzarite pursuant to § 329(b) and Fed. R. Bankr. P. 2017.  On

26   December 15, 2006, Catanzarite filed an Amended Rule 2016(b) Statement which did not

27

1   mention the Oregon Property but disclosed that "payments and credits received from the Debtor

2   in the amount of $30,000 were paid on behalf of the following categories: $21,000 in defense of

3   the AAA Electric litigation; $3,000 with regard to the dispute with MBNA; $3,000 for pension

4   work and $3,000 for preparation of the bankruptcy petition and schedules." On January 13,

5   2006, Perrine filed an Amended Schedule F disclosing 12 holders of unsecured non-priority

6   claims totaling $202,277.65.

7       Perrine admits that he did not list his interest in the Perrine Trust as an asset of his estate

8   on Schedule B, but claims that the Perrine Trust did not hold any property at the time of

9   bankruptcy and that his interest in the Perrine Trust was nominal. In response to Speier's request

10  for admissions, Perrine admitted that he was required by Schedule B # 19 to disclose all

11  "contingent and non-contingent interests in estate of a decedent, death benefit plan, life

12  insurance policy or trust" of the debtor, but claims that the Perrine Trust did not hold any

13  property at the time of bankruptcy and that his interest in the Perrine Trust was nominal.

14      In response to Speier's request for admissions, Perrine admitted that he owned a

15  contingent or non-contingent interest in the Perrine Trust on the date of bankruptcy and that he

16  disclosed "None" in response to the question at Schedule B # 19 regarding his ownership of any

17  interest in a trust on the petition date. In response to Speier's request for admissions, Perrine

18  also admitted that the Perrine Trust has never been revoked nor has there been a "Notice of

19  Revocation of Trust" prepared or executed with regards to the Perrine Trust.

20      The Perrine Trust specifically provided that the Oregon Property remained Perrine's

21  separate property, notwithstanding its inclusion in the trust. Perrine transferred the Oregon

22  Property to Catanzarite 97 days prior to the petition date. The Oregon Property was Perrine's last

23  and most significant non-exempt asset. There was an outstanding balance of only $12,000 due

24  Catanzarite when it received the Oregon Property on January 14, 2005. Perrine and Catanzarite

25  have conceded that once it received the Oregon Property, there was "no property remaining in

26  the trust to satisfy creditors."

27

1    Perrine did not amend his Schedule B to disclose his interest in the Perrine Trust nor his

2  stock in Perrine Electric. Nor did Perrine amend his statement of financial affairs to disclose the

3  transfer of the Oregon Property to Catanzarite.

4    On December 16, 2005, Speier timely filed his complaint objecting to Perrine's discharge

5  in this adversary proceeding.  Speier is the duly appointed trustee in Perrine's bankruptcy case

6  and has standing to object to Perrine's discharge under 11 U.S.C. § 727.

7  **F.**    **Contentions of the Parties.**

8    Speier claims that Perrine transferred his interest in the Oregon Property within 1 year

9  before the date of the filing of the bankruptcy petition, with the intent to hinder, delay or defraud

10  a creditor or officer of the estate charged with custody of property under title 11 in violation of §

11  727(a)(2)(A).  Speier further claims that Perrine concealed his interest in the Perrine Trust and

12  his stock in Perrine Electric within 1 year before the date of the filing of the bankruptcy petition,

13  with the intent to hinder, delay or defraud a creditor or officer of the estate charged with custody

14  of property under title 11 in violation of § 727(a)(2)(A).

15    On September 17, 2007, the court granted a partial summary judgment on the following

16  elements of Speier's § 727(a)(2)(A) claim:

17    a.    Perrine's interest in the Oregon Property was property of the debtor which Perrine
       transferred within 1 year before the date of the filing of the petition.

18

19    b.    Perrine's interest in the Perrine Trust was property of the debtor which Perrine
       concealed within one year before the date of the filing of the petition.

20    c.    Perrine's shares of stock in Perrine Electric was property of the debtor which
       Perrine concealed within one year before the date of the filing of the petition.

21

22  The only issue remaining for trial on Speier's § 727(a)(2) (A) claim was whether, in transferring

23  or concealing one or more of the subject properties, Perrine had the subjective intent to hinder,

24  delay or defraud a creditor or officer of the estate charged with custody of property under title

25  11.

26    Speier further claims that Perrine, knowingly and fraudulently, made the following false

27

- 11 -

1    oaths in violation of § 727(a)(4):

2        a.    Perrine declared under penalty of perjury in Schedule B # 12 that he neither owned stock or an interest in a business at the time of bankruptcy;

3

4        b.    Perrine declared under penalty of perjury in Schedule B # 19 that he did not own an interest in a trust at the time of bankruptcy;

5        c.    Perrine declared under penalty of perjury in response to Question # 3 of his statement of financial affairs that he had not made any payments to or for the

6    benefit of creditors within 90 days preceding the commencement of the case or payments to or for the benefit of creditors who were insiders within 1 year

7    preceding the commencement of the case; and

8        d.    Perrine declared under penalty of perjury in response to Question # 10 of his statement of financial affairs that he had not transferred any property (other than

9    in the ordinary course of business or financial affairs of the debtor) within one year preceding the date of bankruptcy.

10 On September 17, 2007, the court granted a partial summary judgment on the following elements

11 of Speier's § 727(a)(4) claim:

12       a.    Each of these statements by Perrine were false; and

13       b.    Each of these statements by Perrine were material in that they each bore a

14   relationship to Perrine's business transactions or estate and concerned the discovery of estate assets, business dealings, or the existence or disposition of

15   Perrine's property.

16 The only remaining issue for trial on Speier's § 727(a)(4) claim was whether one or more of

17 these statements by Perrine was made <u>knowingly</u> and made <u>fraudulently</u>.

18       Perrine denies that the Oregon Property was transferred with the intent to hinder delay or

19 defraud a creditor, arguing that the Oregon Property was transferred to Catanzarite "in kind" at a

20 value of $30,000 to pay accrued legal fees of $12,000 and to provide for a retainer of $18,000 in

21 legal fees for future services, including

22       a.    Future litigation relating to the AAA judgment;

23       b.    Separation of the pension account between Perrine and his ex-wife, Aritza Perrine;

24       c.    Maintenance of routine retirement plan compliance and annual tax filings, and

25       d.    $3,000 for preparation of Perrine's chapter 7 bankruptcy petition.

26   Perrine claims that he did not disclose the Perrine Trust in Schedule B #19 because there

27

1  was no need to disclose it since nothing was left in the trust at the time of bankruptcy.  Perrine

2  further claims that did not disclose the shares of stock in Perrine Electric in Schedule B # 12

3  because there was no need to disclose it since the business was not making money and the stock

4  had no value.  Finally, Perrine denies that he knowingly and fraudulently made false oaths in the

5  schedules and statement of financial affairs, claiming that his responses were made in good faith

6  based on the advice of counsel.

7  **II. DISCUSSION**

8       This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§

9  157(b) and 1334(b).  This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (J) & (O).

10  Venue is appropriate in this court.  28 U.S.C. § 1409(a).

11       In the first and third causes of action in Speier's complaint, Speier seeks denial of

12  Perrine's discharge pursuant to § 727(a)(2)(A) and § 727(a)(4), respectively.[7]  To obtain denial

13  of discharge under either § 727(a)(2)(A) or § 727(a)(4), the plaintiff must establish the

14  allegations of the complaint by a preponderance of the evidence.  Bowman v. Belt Valley Bank

15  (In re Bowman), 173 B.R. 922, 925 (9th Cir. BAP 1994); Western Wire Works, Inc. v. Lawler (In

16  re Lawler), 141 B.R. 425, 429 (9th Cir. BAP 1992).  Objections to discharge are to be literally

17  and strictly construed against the objector and liberally construed in favor of the debtor.

18  Lansdowne v. Cox (In re Cox), 41 F.3d 1294, 1297 (9th Cir. 1986).

19  **A.**    **Section 727(a)(2).**

20       Section 727(a)(2)(A) states that the court shall grant the debtor a discharge unless "the

21  debtor, with the intent to hinder, delay or defraud a creditor or an officer of the estate charged

22  with custody of property . . . , has transferred, removed, destroyed, mutilated or concealed, or has

23  permitted to be transferred, removed, destroyed, mutilated or concealed, property of the debtor,

24  _____

25  [7] On September 17, 2007, an Order on Defendant's Motion for Summary Judgment or
Alternatively, Partial Summary Judgment was entered which, in pertinent part, denied Speier's

26  objection to Perrine's discharge pursuant to § 727(a)(3).  Speier's § 727(a)(5) claim was not
included in the joint PreTrial Order signed on November 26, 2007.

27

1    within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A).  For a

2    discharge to be denied under § 727(a)(2)(A), there must be (1) a disposition of property (*i.e.*,

3    transfer or concealment); (2) with subjective intent to hinder, delay or defraud a creditor; and (3)

4    it must occur within one year prior to filing bankruptcy.  Fogal Legware of Switzerland, Inc. v.

5    Wills (In re Wills), 243 B.R. 58, 65 (9th Cir. BAP 1999).   Because the statute is written in the

6    disjunctive, an intent to hinder or delay is sufficient to deny discharge under § 727(a)(2).

7    Bernard v. Sheaffer (In re Bernard), 96 F.3d 1279, 1281 (9th Cir. 1996).  Proof of fraud is not

8    necessary nor is injury to creditors relevant for purposes of § 727(a)(2).  Id. at 1281-82.

9          1. Perrine Trust.

10         Perrine's interest in the Perrine Trust was property of the debtor which Perrine concealed

11   within one year before the date of the filing of the petition.  Perrine had an absolute duty to file

12   complete and accurate schedules.  See Cusano v. Klein, 264 F.3d 936, 946 (9th Cir. 2001); In re

13   Mohring, 142 B.R. 389, 394 (Bankr. E.D. Cal. 1992), aff'd, 153 B.R. 601 (9th Cir. BAP 1993),

14   aff'd, 24 F.3d 247 (9th Cir. 1994).  Perrine is presumed to have read the schedules and statements

15   before signing the documents, and is responsible for their contents.  Carpenter v. Fanaras (In re

16   Fanaras), 263 B.R. 655, 667 (Bankr. D. Mass. 2001).  Whether or not the documents are

17   prepared by an attorney, Perrine, as a debtor seeking a discharge in chapter 7, bears an

18   independent responsibility for the accuracy of the information contained in his schedules and

19   statements.  See, e.g., AT&T Universal Card Servs. Corp. v. Duplante (In re Duplante), 215 B.R.

20   444, 447 n.8 (9th Cir. BAP 1997) (noting that "[s]chedules and statements of financial affairs are

21   sworn statements, signed by debtors under penalty of perjury" and warning that "[a]dopting a

22   cavalier attitude toward the accuracy of the schedules and expecting the court and creditors to

23   ferret out the truth is not acceptable conduct by debtors or their counsel"); Palmer v. Downey (In

24   re Downey), 242 B.R. 5, 15 (Bankr. D. Idaho 1999) (stating that "attorney error does not absolve

25   a debtor, who signs the petition and schedules under penalty of perjury, from the duty to ensure

26   the information is accurate and complete to the best of his knowledge").

27

- 14 -

1    Perrine justifies the nondisclosure of his interest in the Perrine Trust and Perrine Electric

2   stock because the assets ostensibly had no value.  According to Perrine, the Perrine Trust was not

3   disclosed because there was nothing left in the trust at the time of bankruptcy.  The Perrine

4   Electric stock was not disclosed because it had no value, according to Perrine, since the business

5   was not making money.[8]

6    It is not for the debtor, in his bankruptcy schedules or testimony at the meeting of

7   creditors, to decide what assets should be disclosed or what information is or is not relevant.

8   United States Truste v. Gardner (In re Gardner), 344 B.R. 663, 667 (Bankr. M.D. Fla. 2006);

9   Baron v. Klutchko (In re Klutchko), 338 B.R. 554, 568 (Bankr. S.D.N.Y. 2005).  Even worthless

10   assets and unprofitable business transactions must be disclosed in the debtor's schedules and

11   statements. Nof v. Gannon (In re Gannon), 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994); see

12   Chalik v. Moorefield (In re Chalik), 748 F.2d 616, 619 (11th Cir. 1984) (upholding denial of

13   discharge to a debtor who failed to list on his petition interests he had in then worthless

14   corporations).  The purpose of requiring debtors to file accurate and comprehensive schedules

15   and statements is to furnish the trustee and creditors with detailed information about the debtor's

16   financial condition, thereby saving the expense of long and protracted examination for the

17   purpose of soliciting the information.  United States Trustee v. Lynn (In re Bellows-Fairchild),

18   322 B.R. 675 (Bankr. D. Or. 2005) ("Neither a debtor nor his attorney is entitled to omit

19   information or provide partial information simply because, in their view, the information

20   provided is sufficient to allow the trustee to determine the value of a debtor's estate").

21    Defendant did not disclose the Perrine Trust in Schedule B # 19, and never amended

22   Schedule B to disclose the Perrine Trust.  After Speier discovered the existence of the Perrine

23   Trust, Perrine misrepresented the assets of the Perrine Trust under oath in response to questions

24

25   [8] Perrine's counsel admits, however, that the stock in Perrine Electric was worth $75,000 at the

26   time Perrine executed the Stipulation for Entry of Judgment on January 10, 2005.  See Debtor's
Trial Brief, p.18, l.3.

27

1  from Speier at his continued creditors' meeting on June 20, 2005. Perrine testified that the only

2  asset in the Perrine Trust had been the La Habra Property when, in fact, the trust assets included

3  at its inception the La Habra Property, the Notes, the Oregon Property, 50 shares of stock in

4  Perrine Electric, and a pension at Schwab & Company, Inc.[9]  At the first meeting of creditors on

5  May 23, 2005, Perrine initially testified that Vicki L. Perrine was on title to the La Habra

6  Property when it was sold and the proceeds were used to purchase the Corona Property in her

7  name alone.  This statement was false in that the La Habra Property was Perrine's sole and

8  separate property, and it continued to remain his separate property until it was sold by the

9  Perrine Trust in March 2004.  Despite his repeated requests, Speier did not receive a complete

10  copy of the Perrine Trust agreement until the day of Vicki L. Perrine's deposition in Adversary

11  No. RS 05-01243 PC, the adversary proceeding commenced by Speier to recover proceeds from

12  the sale of the La Habra Property, a trust asset, as a fraudulent transfer.  This evidence, taken

13  together, supports a finding that Perrine had the subjective intent to hinder or delay Speier, as an

14  officer of the estate charged with custody of property under title 11, with respect to the Perrine

15  Trust.

16        2. <u>Oregon Property</u>.

17        Perrine's interest in the Oregon Property was property of the debtor which Perrine

18  transferred within 1 year before the date of the filing of the petition.  The only remaining issue is

19  whether he transferred the Oregon Property with the subjective intent to hinder, delay or defraud

20  a creditor.  Perrine correctly observes that a preferential transfer to a creditor is not, of and by

21  itself, grounds to deny discharge.  <u>Hultman v. Tevis</u>, 82 F.2d 940, 941 (9th Cir. 1936).  But that is

22  not Speier's point in seeking denial of Perrine's discharge.

23        Four months prior to bankruptcy, Perrine was embroiled in a lawsuit with AAA, his

24  largest creditor.  On the eve of trial, Perrine transferred the Oregon Property from the Perrine

25  _____

26  [9] Perrine's pension plan was not transferred to the Perrine Trust due "to the anti-alienation
provisions of the pension laws."  Debtor's Trial Brief, p.19, l.12-14.

27

- 16 -

1    Trust to his attorney, Catanzarite. The Perrine Trust specifically provided that the Oregon

2    Property remained Perrine's separate property, notwithstanding its inclusion in the trust. The

3    Oregon Property was Perrine's last and most significant non-exempt asset. On January 10, 2005,

4    Perrine and his wife signed the Stipulation for Entry of Judgment. Perrine and his wife admit

5    that, at the time they transferred the Oregon Property to Catanzarite the following day, they were

6    concerned that the Oregon Property would be seized by AAA to satisfy its judgment. With the

7    Oregon Property in the hands of Catanzarite, the Stipulation for Entry of Judgment with AAA

8    was entered 10 days later.

9        Perrine and Catanzarite concede that once Catanzarite received the Oregon Property,

10    there was "no property remaining in the trust to satisfy creditors." If the Perrine Trust was

11    worthless, as claimed by Perrine, then there would have been no need to protect it. Yet one of

12    the stated purposes of Catanzarite's retainer for future legal services was to protect the Perrine

13    Trust, _i.e._, "securing the continued representation of the Trust and the individuals in future

14    litigation including without limitation, with creditors and to protect the home equity of Vicki and

15    the pension of Eugene."

16        The Oregon Property was transferred to Catanzarite at a "stipulated" value of $30,000.

17    Yet Catanzarite was owed only $12,000 for work performed up to the date of the transfer. The

18    effect of the transfer was to hinder AAA's ability to collect its judgment, to pay Catanzarite

19    $12,000 for work performed to the date of the transfer, and to place Perrine's remaining non-

20    exempt equity in the Oregon Property in the hands of one creditor, who was an insider, to the

21    exclusion of his other creditors. Section 727(a)(2)(A) requires only that the debtor make the

22    transfer with the intent to "hinder delay, or defraud" a creditor. Adeeb v. First Beverly Bank (In

23    re Adeeb), 787 F.2d 1339, 1343 (9th Cir. 1986). "There is no requirement that the debtor intend

24    to hinder all of his creditors." Id. Withholding funds from one creditor to pay another creditor

25    does not absolve a debtor from liability under § 727(a)(2)(A). Locke v. Schafer (In re Schafer),

26    294 B.R. 126, 131 (N.D. Cal. 2003).

27

1    Finally, Perrine claims that he did not disclose his interest in the Perrine Trust, the stock

2   in Perrine Electric, or the transfer of the Oregon Property in good faith based on the advice of

3   counsel. "Advice of counsel is not regarded as a separate and distinct defense but rather as a

4   circumstance indicating good faith in which the trier of fact is entitled to consider on the issue of

5   fraudulent intent." Bisno v. United States, 299 F.2d 711, 719 (9th Cir. 1961). A debtor's reliance

6   on the advice of counsel must be "in good faith" in order to establish that such reliance is

7   indicative of a lack of fraudulent intent. Adeeb, 787 F.2d at 1343. A debtor who knows that a

8   purpose of a transfer is to hinder or delay a creditor does not rely in good faith upon the advice

9   of counsel in a manner that negates the element of intent. Creative Recreational Sys., Inc. v.

10   Rice (In re Rice), 109 B.R. 405, 408 (Bankr. E.D. Cal. 1989), aff'd, 126 B.R. 822 (9th Cir. BAP

11   1991). In this case, Perrine knew that at least one purpose of the Oregon Property transfer was to

12   hinder or delay AAA's ability to collect the $75,000 stipulated judgment.

13    Based on the foregoing, the court finds that Speier has carried his burden to establish

14   grounds for denial of Perrine's discharge under § 727(a)(2)(A).

15   **B.     Section 727(a)(4).**

16    Section 727(a)(4) authorizes the court to deny a chapter 7 discharge to a debtor who

17   "knowingly and fraudulently" makes a false oath in or in connection with the case. "The

18   fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate

19   information without having to conduct costly investigations." Wills, 243 B.R. at 63. To prevail

20   under § 727(a)(4)(A), the plaintiff must show: (1) the debtor made a false oath in connection

21   with the case; (2) the oath related to a material fact; (3) the oath was made knowingly, and (4)

22   the oath was made fraudulently. Id., at 62; Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882

23   (9th Cir. BAP 2005).

24    A false oath may involve a false statement or omission in the debtor's schedules. Wills,

25   243 B.R. at 62. A false statement is material if it bears a relationship to the debtor's business

26   transactions or estate, or concerns the discovery of assets, business dealings, or the existence and

27

- 18 -

1    disposition of the debtor's property. Id. A false statement or omission can be material even in

2    the absence of direct financial prejudice to creditors, particularly if it "aids in understanding the

3    debtor's financial affairs and transactions." Stanley v. Hoblitzell (In re Hoblitzell), 223 B.R.

4    211, 215-16 (Bankr. E.D. Cal. 1998). A debtor "acts knowingly if he or she acts deliberately or

5    consciously." Roberts v. Erhard (In re Roberts), 331 B.R. 876, 883 (9th Cir. BAP 2005).

6        In this case, Perrine admits that he made a deliberate and conscious choice to omit the

7    stock in Perrine Electric and his interest in the Perrine Trust from Schedule B, and not to disclose

8    the transfer of the Oregon Property in response to Question # 10 of his statement of financial

9    affairs. Perrine's disclosure of $3,000 paid to Catanzarite on January 14, 2005, for debt

10   counseling or bankruptcy in response to Question # 9 of the statement of financial affairs, rather

11   than full and accurate details concerning the "in kind" transfer of the Oregon Property to

12   Catanzarite, was also a deliberate and conscious choice on Perrine's part.

13       Perrine claims that his false statements or omissions were not fraudulent because he acted

14   with an honest and good faith belief that his disclosures, or lack thereof, were accurate based on

15   the advice of counsel. The "fraudulently" element of § 727(a)(4) is established if the plaintiff

16   shows that (a) the debtor made the representations; (b) that at the time he knew they were false,

17   and (c) that he made them with the intention and purpose of deceiving the creditors. Roberts,

18   331 BR. at 884. Even assuming arguendo that Perrine transferred the Oregon Property to

19   Catanzarite in conjunction with a valid retainer agreement and not for the purpose of hindering

20   or delaying AAA, Perrine's failure to disclose the transfer and misrepresentations concerning the

21   payment of fees to Catanzarite merit a denial of discharge under § 727(a)(4).

22       On May 6, 2005, Perrine falsely represented under oath in response to Question #10 of

23   his statement of financial affairs that he had not transferred any property (other than in the

24   ordinary course of business or financial affairs of the debtor) within 1 year preceding the date of

25   bankruptcy. He further falsely represented under oath in response to Question # 9 of his

26   statement of financial affairs that he had paid the sum of $3,000 to Catanzarite on January 14,

27

1 | 2005, for debt counseling or bankruptcy.

2 |        Catanzarite did not receive the sum of $3,000 from Perrine on January 14, 2005.

3 | Catanzarite received a transfer of the Oregon Property from the Perrine Trust on January 14,

4 | 2005, with a stipulated value of $30,000. Catanzarite then apportioned a value of $3,000 from

5 | the $30,000 transfer for legal services ostensibly rendered to Perrine in contemplation of or in

6 | connection with his bankruptcy case. No facts concerning Catanzarite's retainer agreement nor

7 | its receipt of the Oregon Property 97 days prior to bankruptcy were disclosed by Perrine in his

8 | statement of financial affairs nor by Catanzarite in either the original Rule 2016(b) statement or

9 | the amended Rule 2016(b) statement. Nor did Catanzarite disclose the method used to calculate

10 | the $30,000 "stipulated" value of the Oregon Property. Perrine never amended his statement of

11 | financial affairs to make full disclosure.

12 |        Perrine's false statements and omissions did not end at that point. Perrine falsely

13 | represented in Schedule B # 19 that he did not own an interest in a trust on the petition date, and

14 | falsely represented in Schedule B # 12 that he did not own stock in a corporation on the petition

15 | date. Schedule B has not been amended. In response to Question #1 of his statement of

16 | financial affairs, Perrine understated his gross income for the three-year period preceding the

17 | petition date. There was no disclosure of the "in kind" payment to Catanzarite, an insider, in

18 | response to Question # 3 of the statement of financial affairs.[10] In Schedules I and J, Perrine

19 | disclosed that he had absolutely no income or expenses. Perrine identified his wife in Schedule I

20 | as "Vicki Martinez" notwithstanding the fact that she had not used the name since her first

21 |

22 |
23 | [10] Section 101(31)'s definition of "insider" is not limiting. An insider includes "one who has a sufficiently close relationship with a debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor." Miller v. Schuman (In re Schuman), 81 B.R.
24 | 583, 586 (9th Cir. BAP 1987). Secondly, there was no evidence that Perrine had ever paid
25 | attorneys' fees to Catanzarite or any other firm with an "in kind" transfer of property, real or personal, prior to his transfer of the Oregon Property. Perrine did not transfer the Oregon
26 | Property in the ordinary course of his financial affairs, particularly given the fact that it was his last and most significant non-exempt asset.
27 |

1   marriage. He also disclosed in Schedule I that she had no income. At trial, Perrine reasoned that

2   he had no monthly expenses since "Vicki paid all the bills." He was unable to articulate any

3   reason for the disclosure of his wife's identity as "Vicki Martinez" in Schedule I, particularly in

4   light of his response to Question #16 of the statement of financial affairs in which he identified

5   his wife as "Vicki L. Meyer." On June 20, 2005, Perrine amended Schedule I after Speier's

6   examination of Perrine at an earlier creditors' meeting revealed that his wife was not

7   unemployed as stated in the original Schedule I, but was employed as Perrine Electric's business

8   manager under the name Vicki L. Meyer. No other amendments were made by Perrine to

9   Schedules I or J. Asked at trial whether he read the original schedules before he signed and filed

10  them with the court, Perrine replied simply "I would have thought so."

11          A debtor's fraudulent intent may be established by circumstantial evidence or by

12  inferences drawn from the debtor's course of conduct. In re Devers, 759 F.2d 751, 753-54 (9th

13  Cir. 1985); Hoblitzell, 223 B.R. at 215. A court "may find the requisite intent where there has

14  been a pattern of falsity or from a debtor's reckless indifference to or disregard of the truth."

15  Wills, 243 B.R. at 64; see Hansen v. Moore (In re Hansen), 368 B.R. 868, 879 (9th Cir. BAP

16  2007) ("The sheer number of material inaccuracies contained in the schedules that debtor, an

17  attorney, admittedly reviewed and revised twice suffices as circumstantial evidence to support

18  the finding that the 'knowingly and fraudulently' element of § 727(a)(4) was proven"); Garcia v.

19  Coombs (In re Coombs), 193 B.R. 557, 566 (Bankr. S.D. Cal. 1996) (stating that "multiple

20  omissions of material assets or information may well support an inference of fraud if the nature

21  of the assets or transactions suggests that the debtor was aware of them at the time of preparing

22  the schedules and that there was something about the assets or transactions which, because of

23  their size or nature, a debtor might want to conceal"). While a discharge should not be denied

24  simply because items are omitted from the schedules and statements due to an honest mistake,

25  "the existence of more than one falsehood, together with a debtor's failure to take advantage of

26  the opportunity to clear up all inconsistencies and omissions, such as when filing amended

27

- 21 -

1  schedules, can be found to constitute reckless indifference to the truth satisfying the requisite

2  finding of intent to deceive." <u>Martin Marietta Materials Southwest, Inc. v. Lee (In re Lee)</u>, 309

3  B.R. 468, 477 (Bankr. W.D. Tex. 2004).

4      The court must weigh the credibility of witnesses.  Perrine is not a naive nor

5  unsophisticated debtor.  He is an experienced businessman.  Again, a debtor's reliance on the

6  advice of counsel must be "in good faith" in order to establish that such reliance is indicative of a

7  lack of fraudulent intent.  <u>Adeeb</u>, 787 F.2d at 1343.  The number and pervasiveness of the false

8  statements and omissions in Perrine's schedules and statement of financial affairs, coupled with

9  his false statements under oath at the creditors' meetings, failure to promptly provide requested

10  documentation to the trustee concerning the Perrine Trust and its assets, and failure to amend his

11  schedules and statements to clear up all inconsistencies and omissions, vitiates any element of

12  good faith and constitutes, at a minimum, reckless indifference to the truth and, therefore, the

13  requisite intent to deceive.  Accordingly, the court finds that Perrine's failure to disclose the

14  Perrine Trust, Perrine Electric stock, and the Oregon Property transfer in his schedules and

15  statement of financial affairs, respectively, was done with the intent to deceive Speier and his

16  creditors.

17                                   **III.  CONCLUSION**

18      Perrine transferred property of the debtor, within one year before the date of the filing of

19  the petition, with actual intent to hinder or delay a creditor and the trustee.  Perrine also

20  "knowingly and fraudulently" made a false oath in or in connection with the case.  Therefore,

21  Perrine's discharge will be denied under § 727(a)(2)(A) and § 727(a)(4).  A separate judgment

22  will be entered consistent with this memorandum decision.

23  Dated:    **DEC 0 6 2007**

24                                   PETER H. CARROLL
                                     United States Bankruptcy Judge

25

26

27

                                        - 22 -

**NOTE TO USERS OF THIS FORM:**
*Physically attach this form as the last page of the proposed Order or Judgment.*
*Do **not** file this form as a separate document.*

| | |
|---|---|
| In re EUGENE H. PERRINE, JR.,<br><br>                                              Debtor. | CHAPTER _7____<br><br>CASE NUMBER  RS 05-01473 PC |

# NOTICE OF ENTRY OF JUDGMENT OR ORDER
# AND CERTIFICATE OF MAILING

TO ALL PARTIES IN INTEREST ON THE ATTACHED SERVICE LIST:

1.      You are hereby notified, pursuant to Local Bankruptcy Rule 9021-1(a)(1)(E), that a judgment or order entitled *(specify)*: MEMORANDUM DECISION

was entered on *(specify date)*:  *DEC 1 0 2007*

2.      I hereby certify that I mailed a copy of this notice and a true copy of the order or judgment to the persons and entities on the attached service list on *(specify date)*:  *DEC 1 0 2007*

Dated:  *DEC 1 0 2007*

JON D. CERETTO
**Clerk of the Bankruptcy Court**

*C. Jeanmarie*

By: _____
                    *Deputy Clerk*

---

*Rev. 1/01  This form is optional.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.*          **F 9021-1.1**

Service List


Kathleen M. Goldberg
Law Office of Thomas H. Casey, Inc.
22342 Avenida Empresa, Suite 260
Rancho Santa Margarita, CA 92688


Kenneth J. Catanzarite
Catanzarite Law Corporation
2331 West Lincoln Ave.
Anaheim, CA 92801